GRIGG HANNA LUMBER & BOX CO. v. STATE HIGHWAY COMMISSIONER.

1. APPEAL AND ERROR—QUESTIONS REVIEWABLE—EVIDENCE—EMINENT DOMAIN.

In suit to restrain State highway commissioner from violating corner lot owner's claimed rights in relation to a street grade alteration, plaintiff's rights in relation to small rectangular piece of property which will be taken in the widening of one

of the streets are not considered where there is no testimony in the record herein supporting plaintiff's claim that the trial judge in the condemnation case refused to let the jury determine the necessity of taking plaintiff's land.

2. INJUNCTION—HIGHWAY CONSTRUCTION—ABUTTING OWNERS.

In suit by owner of property on north side of thoroughfare being widened and depressed between two railroad viaducts, there would be no occasion for issuing an injunction against further construction on south portion of such thoroughfare pending determination of plaintiff's case and condemnation of his easement of access since such construction would not interfere with traffic on north portion or with plaintiff's easement.

3. CONSTITUTIONAL LAW—EMINENT DOMAIN—LOWERING OF STREET GRADE.

An impairment of the right of access to industrial property, located at a corner between two railroad viaducts, by seven-foot lowering of the grade of the street in front which rendered the side street inaccessible to vehicular traffic except by a circuitous route *held*, not the impairment of such a property interest as was protected by provision of Constitution as to exercise of the power of eminent domain (Const. 1908, art. 13, § 1).

4. SAME—LOWERING OF STREET GRADES—DUE PROCESS.

The lowering of street grades is not the taking of abutting property without due process of law; hence, a city may proceed to lower the grade and then begin appropriate proceedings under the grade separation act since the public interest of safe and rapid travel may be paramount to the interest of the individual (1 Comp. Laws 1929, § 4881 *et seq.*).

5. INJUNCTION—EMINENT DOMAIN—ADEQUATE REMEDY AT LAW.

Remedy at law of owner of corner property, used for industrial purposes, in front of which street grade was so lowered as to require vehicular traffic to use a circuitous route instead of merely turning corner to reach it, *held*, adequate under amendment of grade separation statute; hence, property owner could not maintain bill to enjoin construction work incident to such grade separation on side of street abutting its property (1 Comp. Laws 1929, § 4514, as amended by Act No. 335, Pub. Acts 1931).

6. EMINENT DOMAIN—LOWERING OF STREET GRADE—DESTRUCTION OF EASEMENT—ADEQUATE REMEDY AT LAW—MEASURE OF DAMAGES.

The adequacy of the remedy at law afforded to owner of corner property is not impaired by fact that the statute does not

assume to cover damages for destruction of an easement in a street since the measure of damages is the diminution in the actual and rental value of the property caused by more circuitous and incommodious vehicular route its lessees and customers must pursue to reach property where one street is closed by virtue of seven-foot lowering of grade of other street (Act No. 335, Pub. Acts 1931).

7. SAME—CHANGE OF STREET GRADE—ALTERNATIVE ROUTE.

Prior to construction work on grade separation, a property owner is not entitled to compensation for consequential damages caused by mere change of grade of street in front of his property nor where direct vehicular access is cut off, providing a new and alternative means of ingress and egress is afforded by the governing authority in the exercise of the police power as such damages as are recoverable may be sought after the improvement has been begun (1 Comp. Laws 1929, § 4481 et seq.; Act No. 335, Pub. Acts 1931).

8. CORPORATIONS—REPORTS—FEES—POWER TO SUE.

Whether or not power of corporation, which had failed to file corporate reports and pay fees until after commencement of suit, to sue was suspended is not determined where it was not entitled to relief sought.

9. COSTS—DAMAGES—LOWERING OF GRADE.

No costs are allowed in suit involving determination of prior right to damages for impairment of easement of access incident to lowering of grade of street prior to proceeding with construction.

Appeal from Wayne; Callender (Sherman D.), J. Submitted June 11, 1940. (Docket No. 79, Calendar No. 41,192.) Decided September 6, 1940.

Amended bill by the Grigg Hanna Lumber & Box Company, a Michigan corporation, against Murray D. Van Wagoner, State Highway Commissioner, to enjoin improvement of a street and for other relief. From decree rendered, plaintiff appeals and defendant cross-appeals. Modified and affirmed.

*Kenneth M. Stevens*, for plaintiff.

*Thomas Read,* Attorney General, and *Edmund E. Shepherd* and *Kenneth G. Prettie,* Assistants Attorney General, for defendant.

POTTER, J. Plaintiff filed a bill of complaint against defendant to restrain what it claimed to be a violation of plaintiff's rights in relation to a street grade alteration. From decree for defendant, plaintiff appeals and defendant cross-appeals.

The bill of complaint alleges that plaintiff is the owner of 141.83 feet of property on the north side of Michigan avenue, at the intersection of Michigan avenue and Bangor avenue; that on the property are two brick buildings containing approximately 50,000 square feet of floor space now occupied by the American Brake Shoe Company; that Michigan avenue runs east and west, and Bangor avenue north from its intersection with Michigan avenue; that at its northernmost end Bangor avenue dead-ends at the New York Central railroad; that Bangor avenue is at present the only method of ingress and egress from plaintiff's property; that immediately east of plaintiff's property Michigan avenue dips down under a grade separation bridge to pass under the Michigan Central railroad; that two and one-half blocks west of plaintiff's property Michigan avenue dips down under a grade separation bridge to pass under the New York Central railroad; that between the two grade separation bridges, at a point one block west of Bangor avenue, Michigan avenue rises to intersect Scotten avenue at grade; that the intersection of Scotten avenue and Michigan avenue is an important intersection, heavily traveled and serving the industrial and residential districts north of Michigan avenue; that the Michigan State highway department proposes to widen Michigan avenue; that in conjunction with widening Michigan avenue

defendant proposes to lower the grade of Michigan avenue for the entire two and one-half blocks between the railroad overheads so that Michigan avenue will pass under an overhead bridge to be constructed on Scotten avenue, thereby eliminating the intersection of Scotten avenue and Michigan avenue at grade; that the lowering of the grade will leave the present intersection of Bangor avenue seven feet above the grade of Michigan avenue and will completely shut off plaintiff's property from all access to Michigan avenue except by a circuitous route through an alley which runs west from the north end of Bangor avenue to Scotten avenue, thence across Scotten avenue to Clark avenue extension which runs southwest to intersect Michigan avenue some two and one-half blocks west of plaintiff's property; that the State highway commissioner has announced that the work will begin at once and will continue pending and during condemnation proceedings.

Plaintiff further alleges that the city of Detroit has filed a condemnation case in the recorder's court for the city of Detroit, in which case the city has sought to condemn a portion of plaintiff's property that will be taken by the public authorities in the widening of Michigan avenue; that there has been omitted from the condemnation case plaintiff's easement of access to and from its property; that plaintiff has been informed the city of Detroit does not intend to bring any condemnation proceedings against plaintiff's easement of access to its property but proposes to permit the State highway department to close the street without any court proceedings. Plaintiff prays that defendant be enjoined from proceeding in any manner to hollow out Michigan avenue until there has been prosecuted to a successful conclusion statutory procedure for the

acquisition of the land necessary for the proposed plan and from obstructing the Michigan avenue entrance to Bangor avenue until plaintiff's easement of access to and from its property has been condemned.

Defendant filed an answer admitting the plan as adopted will leave the present intersection of Bangor avenue seven feet above the grade of Michigan avenue, and denying the alternative route will require passage through an alley for the reason the proposed plan calls for the widening of the present existing alley to a street 30 feet wide. Defendant alleges the only work being done or which will be done upon Michigan avenue until the condemnation of plaintiff's land has been completed is the lowering of the grade on the south side of Michigan avenue; that such work is upon the recently acquired and untraveled portion of Michigan avenue and in no way interferes with travel upon Michigan avenue; that no condemnation proceedings for the acquisition of plaintiff's easement are required inasmuch as plaintiff has an adequate remedy at law; and that several different methods for widening grade crossings were studied and the present proposed plan was adopted by the common council as the plan which would best promote the public safety, welfare and convenience, consistent with the cost of the improvement.

February 2, 1940, a decree was entered enjoining defendant from changing the grade upon the north six feet of Michigan avenue or making any change in said street which would in any way interfere with plaintiff's ingress and egress until confirmation of the verdict of the jury in the condemnation case.

March 30, 1940, plaintiff filed a motion for rehearing, alleging that when the decree was entered it was assumed by the court that the question of neces-

sity would be submitted to and decided by the condemnation jury in the condemnation case, No. 1,757, in the recorder's court, brought by the city of Detroit; that such question was not submitted to the jury; that such alleged error would necessitate an appeal by the plaintiff; that unless the trial court granted an injunction staying the work pending a determination of the appeal plaintiff would be deprived of its day in court on the question of necessity by a *fait accompli*.

April 9, 1940, the decree was amended to change the word "six" to "sixty" so as to enjoin defendant from changing the grade upon the north sixty feet, being the width of the north half of Michigan avenue, or making any change in such street which would in any way interfere with plaintiff's ingress and egress until confirmation of the verdict in the condemnation case. In all other respects, the decree was affirmed and plaintiff's requests for amendment were denied. Defendant's motion for rehearing was also denied.

April 22, 1940, the verdict of the jury in the condemnation case, No. 1,757, involving plaintiff's land, was confirmed.

Plaintiff appeals from the amended decree, claiming error in refusal to enjoin defendant from (1) proceeding to lower the grade on the north side of Michigan avenue during the appeal plaintiff has taken from confirmation of the verdict in the condemnation case, No. 1,757, in the recorder's court; (2) proceeding to lower the grade on the south side of Michigan avenue; (3) proceeding to lower the grade on the north side of Michigan avenue and thereby permanently closing and obstructing Bangor avenue at Michigan avenue until plaintiff's easement appurtenant and right of ingress and egress

to its property over and through this intersection has been condemned.

Defendant cross-appeals, claiming error in the refusal of defendant's motion to dismiss plaintiff's bill of complaint, as amended.

Plaintiff's rights in the small rectangular piece of property which will be taken in the widening of Michigan avenue should not be injected into the determination of this case. There is no testimony in the record supporting plaintiff's claim that the trial judge, in the condemnation proceedings, refused to let the jury determine the necessity of taking plaintiff's land. Plaintiff's rights will be adequately protected and can best be determined in the appeal to this court from the confirmation of the verdict of the jury in the condemnation case, No. 1,757, in the recorder's court.

The work on the south side of Michigan avenue is upon that part of the street which has recently been acquired by condemnation and upon which the public does not travel. As this work could not possibly interfere with the flow of traffic on Michigan avenue, or with plaintiff's easement of access from Bangor avenue to Michigan avenue, there is no occasion for issuing an injunction. Public funds will not be wasted. Plaintiff's small rectangular piece of property is not absolutely indispensable to the project and, regardless of the jury determination, it is planned to lower the grade of the north side of Michigan avenue to a grade even with that of the newly-constructed south side.

The decisive issue is whether defendant may be enjoined from lowering the grade on the north side of Michigan avenue until it has successfully completed condemnation proceedings against plaintiff's so-called easement of access to Michigan avenue from Bangor avenue.

The Constitution (1908), art. 13, § 1, provides:

"Private property shall not be taken by the public nor by any corporation for public use, without the necessity therefor *being first determined and just compensation therefor being first made* or secured in such manner as shall be prescribed by law." (Italics ours.)

The type of property interest covered by the word "taken" has been the subject of many and sometimes conflicting decisions. As a general rule, an impairment of the owner's right of access to his property by a change in the grade of an adjoining street is not such a property interest as will fall within the ambit of the constitutional guaranty. 1 Lewis, Eminent Domain (3d Ed.), p. 222 *et seq.*, §§ 137, 138. This was the rule at common law (*Governor, & Company of the British Cast Plate Manufacturers* v. *Meredith,* 4 Durn. & E. [T. R.] 794 [100 Eng. Rep. 1306]; *Steinmann* v. *Ormond,* 120 Misc. 845 [199 N. Y. Supp. 738]); the rule in other jurisdictions with similar constitutional provisions (*In re Soldiers & Sailors Memorial Bridge,* 308 Pa. 487 [162 Atl. 309]; *Burns Holding Corp.* v. *State Highway Commission,* 8 N. J. Misc. 452 [150 Atl. 768], affirmed 108 N. J. Law, 401 [154 Atl. 628]); and the rule adopted in this State. *City of Pontiac* v. *Carter,* 32 Mich. 164; *Cummings* v. *Dixon,* 139 Mich. 269; *City of Detroit* v. *Railway Co.,* 163 Mich. 229; *Case* v. *City of Saginaw,* 291 Mich. 130.

"We have repeatedly held that the lowering of street grades is not the taking of abutting property without due process of law. * * * The city may proceed to lower the grades and then begin appropriate proceedings under the grade separation act. 1 Comp. Laws 1929, § 4481 *et seq.,* as amended." *A. M. Campau Realty Co.* v. *City of Detroit,* 268 Mich. 417.

Such decisions are predicated upon the well-recognized theory that in congested metropolitan areas with rapidly increasing population and in a dynamic, swift-moving society the interest of safe and rapid travel is sometimes paramount to the interest of the individual. *City of Pontiac* v. *Carter, supra.* Recognizing the hardship caused an individual thereby, the legislature in 1893 enacted a remedial statute (Act No. 92, Pub. Acts 1893 [1 Comp. Laws 1897, § 4229 *et seq.*]) allowing compensation for damages occasioned by a change of grade where any public street or highway was constructed either across or beneath any railroad. Subsequently, the statute was amended (Act No. 268, Pub. Acts 1909) to eliminate the requirement that the necessity be determined and damages assessed before the construction work was actually commenced (See 1 Comp. Laws 1915, § 4750 *et seq.*). *Mead* v. *Railroad Co.*, 174 Mich. 521. In 1931, the act was extended (Act No. 335, Pub. Acts 1931 [Comp. Laws Supp. 1940, § 4514, Stat. Ann. § 9.1141]) to include "the reconstruction of existing grade separations or the alteration of existing grade separations for increased highway or railroad facilities." Plans have been prepared and a contract drawn and approved for the construction of the south abutments to the railroad grade separation structures to the east and west of plaintiff's property. By the terms of this statute, plaintiff is given an adequate remedy at law.

Plaintiff claims the remedy at law is not adequate because it was held in *Re City of Detroit*, 261 Mich. 278, "the statute does not assume to cover damages for destruction of an easement in the street itself." Plaintiff, however, is not seeking to recover damages for the destruction of an easement in Michigan avenue, but is seeking damages for the diminution in

the actual and rental value of its property caused by the more circuitous and incommodious vehicular route its lessees and customers must pursue in order to reach the property. The act permits the recovery of this type of damage.

Plaintiff recognizes the general rule that one is not entitled to compensation for damages caused by a change of grade, but asserts there is an exception whenever the work results in an injury to the property owner which is different in kind, and not merely in degree, from that suffered by the public in general. Special injury is suffered as a matter of law, plaintiff contends, when a property owner's right of access is shut off by the vacation or closing of a street upon which his property immediately abuts. *Pearsall* v. *Eaton County Board of Supervisors,* 74 Mich. 558 (4 L. R. A. 193) ; 2 Elliott, Roads & Streets (4th Ed.), p. 1678, § 1180; 49 A. L. R. 330, 334-337, and cases cited; 93 A. L. R. 639, 640, and cases cited. Cases supporting this doctrine are either those in which the improvement entirely deprives one of access to the general system of streets (*Pearsall* v. *Eaton County Board of Supervisors, supra*), or where one end of a street has been closed so that property has been left abutting upon a blind street or cul-de-sac. 49 A. L. R. *supra;* 93 A. L. R. *supra.* See, also, 13 Virginia Law Review, pp. 334, 336; 39 Yale Law Journal, p. 128.

Such cases are distinguishable from cases like the present where, in the exercise of the police power, the governing authority has provided a new and alternative means of ingress and egress. *Warner* v. *Railroad Co.,* 86 Conn. 561 (86 Atl. 23) ; *O'Brien* v. *Railroad Co.,* 148 App. Div. 733 (133 N. Y. Supp. 322).

In *Warner* v. *Railroad Co., supra,* plaintiff owned property on the west side of Henry street which

intersected Riverside avenue at the north and Prospect street at the south. Defendant's railroad crossed Henry street immediately north of plaintiff's property. In 1909, Henry street was closed at the point where it crossed defendant's tracks and a new street was provided for extending from Prospect street to Riverside avenue substantially parallel to Henry street and 400 feet east of it. The bill of complaint demurred to disclosed that the value of plaintiff's property had been reduced about one-third by the necessity of following a more circuitous route. It was held the improvement was undertaken in the exercise of the police power; that access to and egress from the property could be had as freely as ever although by a more circuitous route; and that the injury which plaintiff suffered did not amount to a taking of private property and was compensable only by a special act of the legislature. Only where the alternative route is dangerous, poorly constructed, or manifestly inadequate, is a contrary decision reached. *Denver Union Terminal Railway Co.* v. *Glodt,* 67 Col. 115 (186 Pac. 904); *Atchison, T. & S. F. R. Co.* v. *Terminal Oil Mill Co.,* 180 Okla. 496 (71 Pac. [2d] 617). See, also, *Buhl* v. *Union Depot Co.,* 98 Mich. 596 (23 L. R. A. 392).

The proposed alternative route will be well constructed and paved. What is now an alley will become a street 30 feet wide, or two feet wider than the present width of Bangor avenue at its intersection with Michigan avenue. Steps are to be erected affording pedestrians easy access to plaintiff's property from Michigan avenue. The project has been approved by the common council, and was made to eliminate traffic delay and accidents so common to a large metropolitan district. It is unnecessary the project be delayed pending an award

of consequential damages.  These damages may be recovered by plaintiff in an action at law even after the improvement has been begun.

For the foregoing reasons, we need not determine whether plaintiff's corporate power to sue was suspended by reason of its failure to file corporate reports and pay fees until 28 days after the filing of the bill of complaint.

Decree affirmed.  On defendant's cross-appeal, decree is modified to dismiss plaintiff's amended bill of complaint.

The foregoing opinion was prepared and submitted by the late Justice POTTER, and it is adopted by the Court.  No costs awarded.

BUSHNELL, C. J., and SHARPE, CHANDLER, NORTH, McALLISTER, WIEST, and BUTZEL, JJ., concurred.